UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

THOMAS M. LONGI,

                    Plaintiff,

                                                    **OPINION & ORDER**
          -against-                                 **CV-02-5821 (SJF)(WDW)**

COUNTY OF SUFFOLK, et al.

                    Defendants.
_____X

FEUERSTEIN, J.

On November 1, 2002, plaintiff Thomas Longi (plaintiff) and his wife Dianne Longi

(Dianne) commenced this action pursuant to, *inter alia*, 42 U.S.C. § 1983 alleging constitutional

violations by numerous defendants. By order dated June 26, 2006, I granted the motions of

various defendants to dismiss, for judgment on the pleadings and/or for summary judgment and

dismissed the majority of plaintiff's claims. Dianne's claims were dismissed in their entirety on

November 28, 2006 and plaintiff settled or discontinued his claims as against certain of the

remaining defendants.[1] Thereafter the following claims remained: (1) certain claims against the

_____

[1] The claims against Grubb & Ellis, Twomey, Latham, Shane and Kelley and Christopher
Kelley were settled on or about November 29, 2006 and the claims were dismissed with
prejudice as against those defendants on March 14, 2007; the claims against Jack O'Connor and
Grand Am RV Sales and Service were settled on or about November 29, 2006; the claims against
Bowman were dismissed with prejudice by order dated November 28, 2006; the claims against
First Industrial Realty Trust were discontinued with prejudice by stipulation dated January 4,
2007; the claims against Burman and Safari Motor Coach were dismissed for lack of jurisdiction
on November 28, 2006; the claims against Complete RV Sales and Service were dismissed with
prejudice by order dated January 10, 2007; the claims against Great American Insurance
Company were discontinued with prejudice by order dated February 15, 2007; and the claims
against Fleetwood Credit Corp. were settled on or about November 30, 2006 and the claims were
dismissed with prejudice as against that defendant on March 14, 2007.

1

County of Suffolk, the Suffolk County District Attorney, the Suffolk County Police Department (SCPD) Fifth Precinct and District Attorney Investigators Peter Calabrese and Robert Gardner (collectively, the County defendants)[2]; (2) the section 1983 conspiracy claims and fraud claims against the Town of Riverhead, the Town of Riverhead Community Development Agency, Andrea Lohneiss i/s/h Andrea Lohneise, Vincent Vilella, and James Stark (collectively, the Riverhead defendants); and (3) the fraud claims against Tag Motors & RV Sales and Service, George Gomes, Richard Rossi and Douglas Jones (collectively, the Tag Motor defendants). The remaining defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the remaining claims against them and plaintiff cross-moves, *inter alia*, for summary judgment in his favor. For the reasons set forth herein, defendants' motions are granted and plaintiff's cross motion is dismissed.

## I. BACKGROUND

### A. Factual Background[3]

#### 1. Remaining Allegations against the Suffolk County defendants[4]

---

[2] The claims against the other named Suffolk County defendants were dismissed pursuant to the June 2006 order.

[3] The facts are derived from defendants' statement of material facts pursuant to Local Rule 56.1 and the accompanying declarations and other evidentiary material filed in support of defendants' motion for summary judgment, as well as plaintiff's response to defendants' statement and counterstatement of disputed material facts and the accompanying declarations and evidentiary material filed in response to the motion and in support of the cross motion.

[4] Pursuant to the June 2006 order, the following claims relating to the Suffolk County defendants were dismissed: (1) plaintiff's first cause of action as against the Suffolk County District Attorney, the SCPD Fifth Precinct, Jones, Gardner and Calabrese; (2) plaintiff's claims as against Suffolk County Clerk Edward Romaine; (3) plaintiff's claims relating to the filing of a

Plaintiff alleges that an investigation into a "deliberately set fire" and related insurance fraud (Compl., ¶¶ 22, 31) at Tag Motors was "suppressed" by defendants SCPD Fifth Precinct, Douglas Jones (Jones), Gardner and Calabrese, who were assigned by the Suffolk County District Attorney in February 2001 and September 2002 to investigate the fire. (Compl., ¶ 22). In addition, plaintiff alleges that in February 2001, he complained of bank fraud committed by North Fork Bank to Gardner, Calabrese, and the Suffolk County District Attorney, who failed to investigate. (Compl., ¶ 62).

Plaintiff alleges that on November 5, 2001, he was "the victim[] of an illegal repossession" of his Safari motor home by defendant Douglas Jones and officers of the SCPD Fifth Precinct. (Compl. ¶ 94). Plaintiff further maintains that the police and the Suffolk County District Attorney did nothing to stop the repossession. (Compl., ¶ 94).

Plaintiff further alleges that the County of Suffolk announced that it intended to sell portions of the Grumman property in September 2002 without compensating him in any way, notwithstanding that he had filed a mechanic's lien on the property. (Compl., ¶ 65).

2.      Remaining Allegations against the Town of Riverhead defendants[5]

Plaintiff alleges that he devised the "single 'best' reuse plan" for the Grumman property, the creation of "another East Coast 'Hollywood' between Manhattan and the Hamptons."

---

mechanic's lien on the Grumman property; and (4) plaintiff's third cause of action as against the SCPD Fifth Precinct.

[5] Pursuant to the June 2006 order, the following claims relating to the Town of Riverhead defendants were dismissed: (1) plaintiff's claims for conversion based upon the purported theft of his "Hollywood Plan"; and (2) plaintiff's claims for misappropriation.

(hereinafter the Hollywood plan). (Compl. ¶¶ 17, 19, 22, 46). Plaintiff alleges that in September 1997, defendant James Stark (Stark) arranged a meeting between plaintiff and defendants Jack O'Connor (O'Connor) of Island Shore Realty (Island Realty) and Richard Seiler (Seiler) of Grubb & Ellis. (Compl., ¶¶ 47-48). According to plaintiff, he was told at the meeting that the Town of Riverhead wanted to do business only with him with respect to the Grumman property, that he would have to present them with a letter of credit in the amount of twenty million dollars to lease the property, and that upon presentation of the letter of credit, the Town of Riverhead would close on the property within thirty days. (Compl., ¶ 48).

Plaintiff alleges that he managed to secure the necessary letter of credit the following morning, but when he called O'Connor that same day he was told that the Town of Riverhead had changed its mind. (Compl. ¶¶ 51-52). Plaintiff alleges that shortly thereafter, he sent a letter to the Town of Riverhead accusing it, Island Realty and Grubb & Ellis of, *inter alia*, "bid rigging" and "theft of intellectual property." (Compl., ¶ 53).

According to plaintiff, in February 1998, he met with defendants Vincent Vilella (Vilella), Bowman and Andrea Lohneiss (Lohneiss), and with Robert Kozakowitz, regarding his "Hollywood Plan." (Compl., ¶ 54). Plaintiff alleges that at the meeting, Vilella, *inter alia*, suggested that First Industrial, which had been given the option to purchase the "industrial core" of the Grumman property, would likely lose their option to buy the property and that if plaintiff gave First Industrial his plans and blueprints relating to the "Hollywood Plan," First Industrial would lease the entire industrial core to him. (Compl., ¶ 54g). According to plaintiff, he reluctantly agreed and a meeting was scheduled between him, defendant Richard Cohen (Cohen) and several other representatives of First Industrial, O'Connor and Bowman. (Compl., ¶ 54g).

4

Plaintiff alleges that, as agreed, he brought his "plans, blueprints, financing strategies, and other documents" to the meeting. (Compl., ¶55). According to plaintiff, First Industrial's representatives took his plans and told him they would let him know. (Compl., ¶ 55). Plaintiff alleges that one day later, he was contacted by defendant Twomey, Latham, Shane and Kelley (Twomey Latham) regarding a contract of sale and an August 1998 closing date. (Compl., ¶ 55). According to plaintiff, at the closing, he was tricked by representatives from the Town of Riverhead and Grubb & Ellis, and by O'Connor and Chris Kelley, of Twomey Latham, into signing a document releasing those entities from any civil claims by him. (Compl. ¶ 56).

Plaintiff alleges that in November 2001, the Town of Riverhead, Stark, Vilella, Bowman, Lohneiss and Kozakowitz, gave or sold the "Hollywood Plan" to Burman. (Compl. ¶¶ 22, 48-53, 65). Plaintiff further alleges that Burman used Thomas's strategy, plans, and blueprints to purchase "Grumman's former 525-acre industrial core." (Compl. ¶ 22). In addition, plaintiff alleges that the Town of Riverhead sold the industrial core of the Grumman property to Burman, notwithstanding that he had filed a mechanic's lien on the property. (Compl., ¶ 65).

C.    Remaining Allegations against the Tag Motor Defendants[6]

According to plaintiff, in December 1995, defendants George Gomes (Gomes) and Richard Rossi (Rossi) put together a "bogus" deal to sell him the "last remaining" Safari motor home from Tag Motors and to supply him with renter's insurance on his two motor homes. (Compl. ¶ 90). Plaintiff alleges that Tag Motors, Gomes and Rossi failed to inform him (1) that

---

[6] Pursuant to the June 2006 order, the following claims relating to the Tag Motor defendants were dismissed: (1) plaintiff's section 1983 claims; and (2) plaintiff's first cause of action as against Tag Motors.

the Safari had already been sold to defendants Nancy Langdon and John Langdon (collectively, the Langdons); and (2) that in September 1995, Gomes convinced Key Bank to lend the Langdons $100,000, using the Safari as collateral. (Compl. ¶ 90).

Plaintiff alleges that in April 1996, "at a phony purchase and closing," he signed paperwork to borrow one hundred thousand dollars ($100,000) to purchase the Safari and paid one thousand dollars ($1,000) to Rossi for rental insurance on both the Safari and the other motor home he owned, but Gomes and Rossi did not give him a copy of the loan contract. (Compl., ¶ 91). According to plaintiff, he received only a temporary registration and insurance card. (Compl., ¶ 91). Plaintiff alleges that after two months, he still had not received an insurance policy, signed bank note, title or registration to the Safari, notwithstanding that he had paid "a small fortune" in renovations and repairs to the motor home. (Compl., ¶ 91). Plaintiff further alleges that when the temporary registration expired, Gomes and Rossi extorted one thousand dollars ($1,000) per month from him, claiming that they otherwise would not issue another registration, until April 1997. (Compl., ¶ 91).

Plaintiff alleges that in April 1997, he was contacted by Gomes, who proposed that if he agreed to finance another motor home at Tag Motors through Key Bank, he and Rossi would issue title and registration documents for both motor homes to plaintiffs. (Compl., ¶ 92). According to plaintiff, "the truth became obvious" in 1997 that "Gomes had sold the Safari to his own corporate officers, who had a loan owed to Key Bank * * * [which], in turn, allowed Gomes and Rossi to sell and insure their repossessed motor homes on Tag [Motor's] lot * **, and just 4 days before releasing the Safari to the Plaintiff [sic], Gomes and Rossi had 11 motor homes burnt to the ground for insurance." (Compl., ¶ 92).

## II. DISCUSSION

### A. Standard of Review

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If the nonmoving party does not so respond, summary judgment will be entered against

7

him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or 'upon the mere allegations or denials of the [nonmoving] party's pleading,' Fed.R.Civ.P. 56(e)." Id. (citations omitted); see also Geyer v. Choinski, No. 07-0190-pr, 2008 WL 190504, at * 1 (2d Cir. Jan. 23, 2008) (holding that reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment).

B.     The County of Suffolk's Motion

Following the dismissal Order of June 26, 2006, the only claims remaining against the County defendants relate to the County's purported involvement in the sale of the Grumman property; the SCPD Fifth Precinct's alleged involvement in the seizing of a Safari Motor Coach home from plaintiff and the failure of the Suffolk County District Attorney and police to stop the repossession; and investigations conducted by detectives Calabrese and Gardner on behalf of the Suffolk County District Attorney.

1.     Claims Regarding the Sale of the Grumman Property

The County of Suffolk never had any ownership interest in the Grumman property or any interest in the "maintenance, brokering or sale of" that property. (See Affidavit of Barbara Grattan [Grattan Aff.], dated November 16, 2006, p. 1)[7]. As plaintiff has failed to proffer any evidence to the contrary, his claim that the County stated an intent to sell portions of the

---

[7] Although, as noted by plaintiff, the Grattan affidavit submitted by the County defendants on their motion is not notarized, the same affidavit is also submitted by the Riverhead defendants and is notarized. Thus, it constitutes admissible evidence.

Grumman property without compensation to him are dismissed.[8]

### 2. Repossession Claims

Although "a claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right," Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir. 1983); see also Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006), it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); see also Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(internal quotations and citation omitted). "Personal involvement" may be established by evidence of direct participation by the supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

Plaintiff does not identify any individual employee or official of the County, SCPD Fifth Precinct or Suffolk County District Attorney's Office in his claims relating to the repossession of his motor home. Thus, liability for the repossession of the plaintiff's motor home may only be imposed on those defendants, if at all, pursuant to Monell.

---

[8] In any event, it does not appear that a mere expression of intent to sell property, without more, is sufficient to constitute a deprivation of property sufficient to establish a due process claim.

9

A municipality or municipal entity cannot be held liable under § 1983 on a *respondeat superior* theory. See, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Skehan v. Village of Mamaroneck, 465 F.3d 96, 108 (2d Cir. 2006). A municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] * * * [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." Monell, 436 U.S. at 690, 98 S.Ct. 2018. The plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. Moray v. City of Yonkers, 924 F.Supp. 8, 12 (S.D.N.Y. 1996); see also Davis v. Lynbrook Police Dept., 224 F.Supp.2d 463, 478 (E.D.N.Y. 2002).

Plaintiff has not established the existence of a formal policy officially endorsed by the County, the Suffolk County District Attorney or the SCPD Fifth Precinct, or that the County,

District Attorney or SCPD Fifth Precinct, took any direct action with respect to the repossession of the motor home alleged in the complaint. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See Barrett v. Orange County Human Rights Commission, 194 F.3d 341, 350 (2d Cir. 1999). Plaintiff has not identified any official with final policymaking authority involved in the repossession of his motor home. Accordingly, plaintiff has not established a Monell claim against any of the County defendants.

### 3. Claims Relating to Investigations

To the extent plaintiff seeks to establish municipal liability against the County or the Suffolk County District Attorney based on his assertion that the District Attorney's Office has a custom, policy and/or practice with respect to the alleged inadequate investigations by Gardner and Calabrese, those claims are without merit. Plaintiff has not established the existence of a formal policy officially endorsed by the County or the Suffolk County District Attorney, or that the County or District Attorney took any direct action with respect to the investigations. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See Barrett, 194 F.3d at 350. The only individuals identified by plaintiff with respect to the investigations are Gardner and Calabrese, who, as investigators, do not have final policymaking authority in the District Attorney's Office. See, e.g. Feerick v. Sudolnik, 816 F.Supp. 879, 886-887 (S.D.N.Y. 1993), aff'd, 2 F.3d 403 (2d Cir. 1993) (dismissing the plaintiff's claims against the assistant district attorneys on the basis that they were not municipal policymakers); Womack v. County of Amador, No. S-02-1063, 2008 WL

11

669811, at * 8 (E.D.Cal. Mar. 7, 2008) (finding that a district attorney investigator did not have final policymaking authority); see generally Monell, 436 U.S. at 691, 98 S.Ct. 2018 (holding that municipal liability may not be based solely on the misconduct of non-supervisory employees); Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (holding that "[A]n official has final [policymaking] authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions"). Accordingly, plaintiff has not established a Monell claim against any of the County defendants with respect to his claims relating to the investigations.

Moreover, there is no constitutional right to an investigation by government officials. Nieves v. Gonzalez, No. 05-CV-00017S, 2006 WL 758615, at * 4 (W.D.N.Y. Mar. 2, 2006); Bal v. City of New York, No. 94 Civ. 4450, 1995 WL 46700, at * 2 (S.D.N.Y. Feb. 7, 1995), aff'd, 99 F.3d 402 (2d Cir. 1995); see also Star v. Burlington Police Department, 189 F.3d 462 (table), 1999 WL 710235 (2d Cir. Sept. 2, 1999) (holding that the plaintiff's allegations that the police department failed to respond to her complaint did not state a valid due process claim under Section 1983); Cotz v. Mastroeni, 476 F.Supp.2d 332, 362 (S.D.N.Y. 2007) (holding that there is no affirmative obligation upon the police to take action against an alleged perpetrator in response to a civilian report); see generally Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 768, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (holding that the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger Due Process protection); DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that the Due Process Clause generally does not confer an affirmative right to governmental aid). Thus, the Suffolk County District Attorney's

12

Office, Gardner and Calabrese had no duty to investigate or prosecute plaintiff's claims of fraud on the part of, *inter alia*, Tag Motors and North Fork Bank.

To the extent plaintiff alleges that Gardner and Calabrese mishandled their investigations of his complaints or committed fraud, the record is devoid of any admissible evidence substantiating this allegation. Indeed, the only evidence in the record indicates that the Suffolk County District Attorney's office declined to investigate plaintiff's complaints, in part, because plaintiff did not provide documentation or evidence of his complaints for almost six (6) months after he was requested to do so. (Affidavit of Peter M. Calabrese [Calabrese Aff.], ¶ 3; Affidavit of Robert W. Gardner [Gardner Aff.]. ¶ 3 and attached Inter-Office Communication). In opposition, plaintiff was obligated to introduce evidence on this point in response to defendants' motion for summary judgment. "A plaintiff opposing a motion for summary judgment must lay bare his proof in evidentiary form and raise an issue of fact sufficient to send to the jury." Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 293 F.Supp.2d 397, 408 (S.D.N.Y. 2003) (citing McGovern v. Local 456, Intern. Broth. of Teamsters, Chauffeurs & Warehousemen & Helpers of America, AFL-CIO, 107 F.Supp.2d 311, 320 (S.D.N.Y.2003)). A party cannot withhold evidence in his possession when his opponent makes a motion for summary judgment claiming that he will introduce the missing evidence at trial. See Weiss, 293 F.Supp.2d at 408, In re Food Fair, Inc., 14 B.R. 46, 48 (Bankr.S.D.N.Y.1981) ("in opposing a motion for summary judgment a party, cannot withhold evidence until the date of trial, but must show by some admissible evidence that there is a genuine issue as to a material fact"). Thus, plaintiff's allegation that "literally hundreds of documents [are] in [his] possession that disprove" the County defendants' motion, ("Plaintiff's Answer in Opposition and Counter-Motion for Summary Judgment" [Plf. Opp.], p. 12), is

insufficient to defeat summary judgment. Plaintiff was clearly aware of his obligation to submit admissible evidence insofar as he submits certain documentation as exhibits and was provided with the notice to *pro se* litigants advising him of his obligation to submit evidence and providing him with a copy of Rule 56 of the Federal Rules of Civil Procedure by all defendants as required by Local Civil Rule 56.2.

Moreover, in order to establish a claim for fraud under New York law, the plaintiff must show (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) causing injury to the plaintiff. Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)). Assuming that Gardner's and Calabrese's alleged statements to plaintiff that they would investigate his complaints constitute a material misrepresentation, plaintiff cannot establish that defendant's knew such statements to be false when made or, more significantly, that plaintiff relied on such representations to his detriment. Accordingly, the branch of the County defendants' motion which seeks summary judgment dismissing plaintiff's claims against them is granted and the complaint is dismissed in its entirety as against those defendants.

      C.     Motion of Riverhead Defendants

The Riverhead Community Development Agency (RCDA), an agency of the Town of Riverhead, took title of the Grumman property in 1998. (Affidavit of Andrea Lohneiss [Lohneiss Aff.], ¶¶ 1 and 3). Defendant Andrea Lohneiss is the director of the RCDA. (Lohneiss Aff., ¶ 1).

The Riverhead defendants retained defendants Island Shore Realty, Grubb & Ellis and O'Connor to market the Grumman property to prospective purchasers. (Lohneiss Aff., ¶ 7).

Plaintiff testified that prior to August 1998, he met with Stark and Vilella, each in their official capacity as Supervisor of the Town of Riverhead[9], and with Vilella in his unofficial capacity as well, to submit plans for the re-use of the Grumman property. (Excerpts of transcript of deposition of Thomas M. Longi [Longi Dep.], pp. 299-301; See also Lohneiss Aff., ¶ 5)[10]. Plaintiff never met personally with Lohneiss regarding his proposal or bid for the Grumman property. (Lohneiss Aff., ¶ 5).

Thereafter, plaintiff's mother, Rose Longi, introduced plaintiff to defendant Bowman, who, notwithstanding plaintiff's allegation to the contrary, was never an official or employee of the Town of Riverhead. (See Lohneiss Aff., ¶ 9; Grattan Aff., p. 3). Plaintiff then retained defendant Christopher Kelley, an attorney at the offices of defendant Twomey, Latham.

By letter dated February 13, 1998, plaintiff was advised by the attorneys representing the

---

[9]  Stark left office as Town Supervisor on December 31, 1997 and Vilella remained in office as Town Supervisor from January 1, 1998 until December 31, 1999. (Lohneiss Aff., ¶ 10; Grattan Aff., pp. 1-2). Thereafter, neither acted as an official or employee of the Town of Riverhead. (Lohneiss Aff., ¶ 10, Grattan Aff., p. 2).

[10]  Plaintiff's challenge to the use of excerpts of the transcript of his deposition testimony is without merit. The affirmation of William Alan Kowalenko, Esq., attorney for the Tag Motor defendants in this action, states that the attached exhibits "B" through "E" and "G" are relevant excerpts of the deposition transcript of the plaintiff from his deposition in October 5, 2006, (Kowalenko Aff., ¶ 3), and, thus, they are properly admissible. See, e.g. Commercial Data Servers, Inc. v. International Business Machines Corp., 262 F.Supp.2d 50, 59 (S.D.N.Y. 2003). Moreover, Rule 56(c) of the Federal Rules of Civil Procedure expressly recognize depositions as properly considered on motions for summary judgment. Although plaintiff challenges the authenticity of the transcript, he does not dispute having received a copy, and proffers evidence indicating that it was sent to him on November 9, 2006, and he does not indicate what specific changes he would have made to the relevant portions thereof.

RCDA that he would not be presented with a lease and that it would not proceed with further consideration of plaintiff's proposal regarding the Grumman property. (Affidavit of Thomas C. Sledjeski [Sledjeski Aff.], Ex. H).

Kelley submitted a draft bid letter for the purchase of the Grumman property, dated August 12, 1998, which had been reviewed by plaintiff, to Vilella. (Sledjeski Aff., Ex. E). On August 17, 1998, a meeting was held at the offices of Twomey Latham, which, according to plaintiff, was attended by O'Connor, Kelley, Bowman and plaintiff. (Id.). At that meeting, plaintiff signed a release of any and all claims against, *inter alia*, the Riverhead defendants in connection with, or in any way related to, the Grumman property. (Sledjeski Aff., Ex. F).

1. Section 1983 Claims

The Riverhead defendants contend that plaintiff's conspiracy and fraud claims against them, asserted pursuant to Section 1983, are time-barred, since he did not file his amended complaint, which first named them, until May 2003.[11]

Claims pursuant to 42 U.S.C. § 1983 are governed by New York's three year statute of limitations. See Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). However, although state law governs the applicable limitations period, federal law governs when a claim accrues. See Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999). Generally, under federal law,

_____

[11] The branch of the Riverhead defendants' prior motion to dismiss which sought dismissal of plaintiff's Section 1983 claims as time-barred was denied on the basis, *inter alia*, that it could not be ascertained from the face of the amended complaint when those claims accrued. However, since the Riverhead defendants have now submitted evidence of when those claims accrued, it is appropriate to revisit their statute of limitations defense.

16

a claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." Id.

All of plaintiff's allegations against the Riverhead defendants relate to conduct that occurred in or prior to August 1998 and, in no event, later than December 31, 1999, when Vilella last acted in any capacity as an official or employee of the Town of Riverhead. It is clear that plaintiff was aware of those claims at that time, as evidenced, *inter alia*, by his letter accusing the Riverhead defendants of bid-rigging and theft and by his signing of the release in August 1998. Plaintiff filed his amended complaint naming the Riverhead defendants on May 19, 2003. As all of plaintiff's claims against the Riverhead defendants accrued more than three (3) years prior to the filing of his amended complaint, his claims against those defendants must be dismissed as time-barred.

### 2. State Law Claims

The Riverhead defendants contend that plaintiff's pendent state law claim for fraud must be dismissed for failure to timely serve a notice of claim.

State notice of claim statutes apply to pendent state law claims in federal court. See, Hardy v. New York City Health & Hospitals Corp., 164 F.3d 789, 793 (2d Cir. 1999); Kyne v. Carl Beiber Bus Services, 147 F.Supp.2d 215, 217 (S.D.N.Y. 2001). Under New York law, a notice of claim is a condition precedent to maintaining tort actions against municipalities or any of their officers, agents or employees. See, New York State General Municipal Law § 50-e; Hardy, 164 F.3d at 793. The notice of claim must set forth, among other things, the nature of the claim, and must be filed within ninety days of when the claim arises. See, General Municipal

Law §§ 50-e(1)(a) and (2); Hardy, 164 F.3d at 793. Notice of claim requirements are strictly construed, and a failure to comply with the requirements generally requires dismissal of the state law claims. See, Hardy, 164 F.3d at 793-794.

It is undisputed that plaintiff never filed a notice of claim against the Riverhead defendants. Accordingly, plaintiff's pendant state law tort claims are dismissed. See, D'Antonio v. Metropolitan Transportation Authority, No. 06 CV 4283, 2008 WL 582354, at * 6 (S.D.N.Y. Mar. 4, 2008) (dismissing plaintiff's fraud claims with prejudice for failure to file a notice of claim); see also Mercedes ex rel. Brown v. Blue, No. 00 Civ. 9225, 2004 WL 2202578, at * 11 (S.D.N.Y. Sept. 30, 2004)(dismissing plaintiff's state law false arrest claim for failure to file a notice of claim). Moreover, as this court lacks jurisdiction to grant plaintiff leave to file a late notice of claim, see, e.g. D'Antonio, 2008 WL 582354, at * 6 (citing cases), plaintiff's state law claims are dismissed with prejudice.[12] As no other claims remain as against the Riverhead defendants, the amended complaint is dismissed in its entirety as against those defendants.


D.    Tag Motor Defendants' Motion

Plaintiff first went to Tag Motors in early 1992 or 1993 to look at Safari Motor Coach homes, but couldn't afford one at that time. (Plf. Dep., pp. 586, 596-597). According to plaintiff, he was contacted by defendants Gomes and Rossi at the end of 1995. (Plf. Dep., pp. 586, 595). Plaintiff testified that he started negotiating with Gomes and Rossi for the purchase of a 1993 Safari Motor Coach in January 1996. (Plf. Dep., p. 595, 598). According to plaintiff, he

---

[12] In light of the dismissal of all plaintiff's federal claims against the Riverhead defendants as time-barred, it is unnecessary to consider the Riverhead defendants' remaining contentions.

took possession of the 1993 Safari Motor Coach in April 1996 and was told by Gomes that he would receive the title and insurance thereto once his credit had "passed." (Plf. Dep., pp. 607-608). Defendants maintain that plaintiff took possession of the vehicle on consignment. Plaintiff testified that within sixty (60) days of receiving the Safari Motor Coach, he remitted payment to Tag Motors in the amount of one thousand dollars ($1,000). (Plf. Dep., p. 609). Plaintiff testified that he paid Tag Motors one thousand dollars ($1,000) monthly until 1997, although the canceled checks he produced evidenced payments to Tag Motors from June to September of 1996. (Plf. Dep., p. 610; Affirmation of William Alan Kowalenko [Kowalenko Aff.], Ex. H).

In November 1996, plaintiff was given the Key Bank of New York (Key Bank) loan book issued to defendant John and Nancy Langdon, the owners of the 1993 Safari Motor Coach, so that he could make payments directly to Key Bank. Thereafter, plaintiff made monthly payments directly to Key Bank in the amount of one thousand sixty-four dollars and ninety-seven cents ($1,064.97) from November 25, 1996 to March 1997[13] as payment for the 1993 Safari Motor Coach. (Kowalenko Aff., Ex. I).

On August 19, 1998, plaintiff filed or attempted to file a notice of lien against the 1993 Safari Motor Coach with the clerk of the County of Suffolk. (Kowalenko Aff., Ex. L). Within that "Notice of Lien," plaintiff identified the names of the owners and debtors of the vehicles as John C. and Nancy Langdon, Tag Motors, Key Bank and Safari Motor Coaches Inc. (Id.). Plaintiff claimed a lien "for the principal and interest of a debt for the price and value of the labor and material furnished in the State of New York towards the repairing, furnishing, shipping and

---

[13] With the exception of a payment in December 1996 in the amount of one thousand fourteen dollars and twenty-six cents ($1,014.26). (Kowalenko Aff., Ex. J).

19

storing of the" 1993 Safari Motor Coach. (Id.).

As noted above, in order to establish claim for fraud under New York law, the plaintiff must show (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) causing injury to the plaintiff. Wynn, 273 F.3d at 156 (2d Cir. 2001).

Plaintiff has failed to establish a material misrepresentation on the part of any of the Tag Motor defendants. Although plaintiff conclusorily alleges that the Tag Motor defendants[14] established a "bogus" deal to sell him the 1993 Safari Motor Coach when it had already been sold to the Langdons, (Compl., ¶¶ 90, 92), the only evidence in the record indicates that plaintiff was aware of the true owners of the Safari Motor Coach insofar as he attempted to file a lien on the vehicle and he took over the loan book and made payments directly to Key Bank on the Langdons loan account. Moreover, as noted above, plaintiff's allegation that "literally hundreds of documents [are] in [his] possession that disprove" the Tag Motor defendants' motion, (Plf. Opp., p. 12), is insufficient to defeat summary judgment. See, e.g. Weiss, 293 F.Supp.2d. at 408.

Moreover, plaintiff's fraud claims are time-barred pursuant to N.Y. C.P.L.R. § 213(8), which requires that an action based upon fraud be commenced within six (6) years from the alleged fraud or two (2) years from the time the plaintiff discovered the fraud or "possessed knowledge of facts from which the fraud could reasonably have been inferred," whichever is greater. See Northridge Ltd. Partnership v. Spence, 246 A.D.2d 582, 583, 668 N.Y.S.2d 220 (2d Dept. 1998). As plaintiff knew of the alleged fraud, or had knowledge of facts from which fraud

---

[14] Notably, plaintiff does not allege the involvement of defendant Jones in any of the purported fraud.

could reasonably be inferred as of November 25, 1996, when he commenced remitting payments for the Safari Motor Coach directly to Key Bank on the Langdons' loan, the greater limitations period is the date of the alleged fraud. Here, plaintiff's cause of action accrued no later than June 1996, when he remitted payment to Tag Motors in purported reliance upon the Tag Motor defendants' allegedly false representations that he owned the vehicle. See, e.g. Ingrami v. Rovner, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132 (2d Dept. 2007) (finding that the cause of action for fraud accrued when the plaintiff transferred the money in reliance upon the defendants' allegedly false representations). Since plaintiff's fraud claims against the Tag Motor defendants were commenced on November 1, 2002, almost five months after the limitations period had expired, those claims are dismissed as time-barred. As the only claims remaining against the Tag Motor defendants were the fraud claims, the amended complaint is dismissed in its entirety as against those defendants.

     E.     Plaintiff's Cross Motion

In light of the dismissal of plaintiff's remaining claims against all remaining defendants, plaintiff's cross motion for summary judgment is denied as moot.

III.    CONCLUSION

The motions of the County defendant, Riverhead defendants and Tag Motor defendants for summary judgment are granted and the amended complaint is dismissed in its entirety as

21

against those defendants, and plaintiff's cross motion for summary judgment is denied. As there are no other defendants or claims remaining in this action, the clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 27, 2008

Copies to:

Thomas Longi, pro se
6 Cedarwood Drive
Shirley, New York 11967

Suffolk County Attorney's Office
P.O. Box 6100
Hauppauge, New York 11788-0099
Attn: Robert A. Caccese, A.C.A.

William Alan Kowalenko, P.C.
475 East Main Street, Suite 104
Patchogue, New York 11772

Thomas C. Sledjeski & Associates, PLLC
18 First Street
P.O. Box 479
Riverhead, New York 11901-0401